**Sylvester TRAVIS and Harvey Gene Davis, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 5, 1970.

William G. Kenton, Jerry Anderson, Shuffett, Kenton & Anderson, Lexington, for appellants.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

The appellants, Harvey Gene Davis and Sylvester Travis, and three other co-defendants were indicted, tried and found guilty on a charge of armed robbery, KRS 433.140. The jury fixed Davis' punishment at 20 years and Travis' punishment at 15 years in the penitentiary. On their appeals to this court Davis and Travis contend that the trial court erred to their prejudice in (1) declining to rule as a matter of law on the competence of one William Combs as a witness, (2) permitting members of the jury to take into the jury room notes they had made during the progress of the trial, and (3) failing to give an instruction on simple robbery, KRS 433.120(1).

■ The witness Combs, a service station attendant, was the victim of the robbery. Before the trial, counsel for the appellants filed an affidavit to the effect that Combs was an out-patient of the VA hospital in Lexington and that as a part of his treatment he took medication that would affect his ability to relate facts as he may have observed them, and they moved that he be examined by a psychiatrist to determine his competence to testify. The motion was overruled and Combs testified. From the contents of his testimony, which covers some 55 pages of the transcript, it is abundantly clear that he was competent, regardless of whether it would have been better procedure for the trial court to hold a preliminary examination or inquiry before permitting him to take the stand. Cf. KRS 421.200; Whitehead v. Stith, 268 Ky. 703, 105 S.W.2d 834, 837 (1937). Whatever aberrations or idiosyncracies (if any) may have been manifested by his own testimony or by other evidence bear only on his credibility rather than his competency as a witness, and upon a review of his entire testimony, in which he was subjected to intensive cross-examination on the subject of his medical history and treatment, we find nothing to destroy as a matter of law its credibility.

■ During the trial the presiding judge called counsel's attention to the fact that some of the jurors were taking notes, but when the case was submitted to the jury he overruled a defense motion that the jurors be admonished to refrain from taking their notes into the jury room. As appears from the annotation, "Taking and use of trial notes by jury," 14 A.L.R.2d 831 et seq., there is a difference of opinion among the various courts of the country on this subject. "Those courts which have held note-taking proper describe it as a legitimate aid to the memory which enables jurors to reach a more equitable verdict, and dismiss contrary considerations as anachronisms from times when few men were literate. * * * Most authorities take the view that the making and use of trial notes is not misconduct but is proper and may even be desirable where it is unattended by undue consumption of time." *Id.* at p. 834. "There are arguments to support both views. * * * With the increase in the quality and competence of jurors and their educational background, note taking is becoming more common. Surely it should be encouraged. After all, jurors are students. We want to help recollection and accurate memory." The State Trial Judge's Book, published under sponsorship of the National Conference of State Trial Judges, pp. 97–98 (West Publishing Co. 1965). We concur in this viewpoint. Lett v. Commonwealth, 284 Ky. 267, 144 S.W.2d 505 (1940), reversing because a court reporter was allowed to read to the jury portions of the evidence in the absence of defendant's counsel, does not conflict in principle.

■ The witness Combs testified that a knife was held at his back, this being the weapon specified in the indictment. He admitted, however, that he had not seen the knife and that he identified it as such only by reason of the fact that something with a sharp point was pressed against his back. In Chadwell v. Commonwealth, 305 Ky. 422, 204 S.W.2d 577 (1947), a prosecution under KRS 433.150 for assault and robbery with an offensive weapon, the evidence was that the prosecuting witness had been set upon, beaten and robbed by three men. The only mention of a weapon was as follows: "What did they use, if anything, in robbing you? Ans. A bottle I guess." This court held that the failure to instruct on the lesser offense of robbery was reversible error. It should be noticed, however, that in the *Chadwell* case the offensive instrument was not used as a threat, whereas in this case it was, and we have held that within the context of KRS 433.140 "any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does so convince him *is* one." Merritt v. Commonwealth, Ky., 386 S.W.2d 727, 729 (1965). Whatever the sharp instrument was, it was

intended to and did convince Combs that it was a knife. Hence the rationale of *Merritt* applies.

The judgment is affirmed.

All concur.