**Jacques Anthony WILLIAMS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 6, 1986.

Rehearing Denied Jan. 22, 1987.

J. David Niehaus, Deputy Appellate Defender of the Jefferson Dist. Public Defender, Louisville, for appellant.

David L. Armstrong, Atty. Gen., Elizabeth Marshall, Asst. Atty. Gen., Frankfort, for appellee.

WHITE, Justice.

This appeal is from the Jefferson Circuit Court in which Appellant Jacques Anthony Williams was convicted of first-degree robbery and of being a second-degree persistent felony offender. His sentence totals twenty years' imprisonment.

On June 9, 1984, a Seven-Eleven Store in Jefferson County was robbed by an individual who threatened the night clerk by reaching towards his back pocket and cautioning, "Do you want your life?" The County Police arrived almost immediately, and with the clerk's assistance spotted and arrested Appellant nearby. Although "bait money" from the convenience store was found on Mr. Williams, no gun or other weapon was located during the investigation, nor was evidence of such produced at trial. In this regard the clerk testified that when he was threatened, he believed "maybe he (Appellant) had a weapon or something."

Appellant argues that there was insufficient evidence to have supported submission to the jury on first-degree (armed) robbery and that accordingly the lower court erred in denying his motions for a directed verdict and for a judgment n.o.v. Alternatively he urges that the instruction under which he was convicted was defective based on its incorporation of an allegedly improper definition of "dangerous instrument." A timely objection preserved this issue.

KRS 515.020, Robbery in the first degree, reads:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

(2) Robbery in the first degree is a Class B felony.

In contrast thereto, Robbery in the second degree, expressed in KRS 515.030, requires only that:

(1) A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft.

(2) Robbery in the second degree is a Class C felony.

■ That which separates first and second-degree robbery is (physical injury or) the involvement of either a weapon which

by its very nature is deadly or an instrument which can be so employed.

■ The Commonwealth supports the conviction by asserting: "It is not fatal that Appellant threatened with an unseen weapon or instrument.... The culpability of the defendant's intent is manifested by his threat of physical harm and danger to the victim exists from the response to fear he perceives as reasonable." This, however, does not distinguish it from second-degree robbery in which the threat of physical force is the gravamen. A response of perceiving danger is quite real under threat; however, such cannot serve to convert something merely speculated upon (a weapon or instrument) into established existence.

To do otherwise places defendant virtually without defense at the caprice of a victim's subjective evaluation without regard to the actual course of events and could lead to convictions for crimes neither intended nor enacted. Our heritage of justice applies the law to facts. Herein the fact is that although force was threatened, the presence of a weapon or instrument was illusory at best. Without an instrument's ever being seen, an intimidating threat albeit coupled with a menacing gesture cannot suffice to meet the standard necessary for a first-degree robbery conviction.

This conforms with existing case law, for in each instance cited by the Commonwealth the determination depended upon whether a *specific* item (*e.g.* a toy pistol, an unloaded pistol with a broken firing pin, a club, a shotgun, a pointed object, a knife) should be characterized as either a deadly weapon or dangerous instrument. In all but one instance the object supporting the first-degree charge was seen. Only in *Travis v. Commonwealth*, Ky., 457 S.W.2d 481 (1970), was it unsighted, but in that case the victim testified that a sharp point was pressed against his back, establishing the presence of *some*thing. In *Travis* the reasoning developed in *Merritt v. Commonwealth*, Ky., 386 S.W.2d 727, 729 (1965), was reaffirmed: "... any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does so convince him *is* one." Thus, for purposes of conviction under KRS 515.020 the otherwise unidentified sharp point was deemed to be a knife.

■ Herein no object was either seen or felt. At most there was an unidentifiable bulge in Appellant's hip pocket which the prosecuting witness felt "maybe" was "a weapon or something." The Commonwealth argues that "[t]he logical inference from the evidence for a reasonable juror was that appellant had an instrument capable of inflicting deadly harm." This, however, begs the question of whether a mere pocket bulge is sufficient to create a jury issue as to the existence not just of "something" but specifically of a deadly weapon or dangerous instrument.

Herein, there simply were no facts to be referred to a jury. Not only was no tangible object of *any* sort ever placed at the scene of the crime, but also it must be recalled that Appellant was almost immediately apprehended and that nothing of this nature was found either on his person or in the course of investigation. The Commonwealth bears a burden of proof in establishing each element of the charged crime, else a motion for a directed verdict by the defendant must be properly entertained.

We would take this opportunity to contrast our statute with that of the Model Penal Code. Under the latter, Article 222.1 states:

(1) *Robbery Defined.* A person is guilty of robbery if, in the course of committing a theft, he:

(a) inflicts serious bodily injury upon another; or

(b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or

(c) commits or threatens immediately to commit any felony of the first or second degree.

An act shall be deemed 'in the course of committing a theft' if it occurs in an

attempt to commit theft or in flight after the attempt or commission.

(2) *Grading.* Robbery is a felony of the second degree, except that it is a felony of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury.

The Comments thereto bring forth the difference with our statute:

> The circumstances specified in subsection (1) are largely self-explanatory. It is the omission of other factors commonly used to raise theft to the level of robbery or even aggravated robbery that requires explanation. *The fact of being 'armed with a deadly weapon,' so commonly used to aggravate robbery under present statutes, has been dropped in favor of the test in clause (b) of subsection (1), which requires threat or menace of serious bodily harm.* Most cases of armed robbery will fall within this category. Only where the robber does not exhibit his weapon would clause (b) operate more narrowly than the armed robbery statutes. We have concluded that it is the employment of a weapon that should be significant in the grading of theft, rather than the discovery, for example, of a switchblade knife in the culprit's pocket.

> Clause (b) encompasses use of a toy pistol or unloaded gun, since such a device can be employed to threaten serious injury and may be effective to create fear of such injury.

An annotation at 81 ALR3 1006 outlines "Robbery by means of toy or simulated gun or pistol." The cases therein turn, however, on the threat of imminent use of force; fear is the gravamen not whether in fact a deadly or dangerous weapon is involved. Accordingly, their reasoning is not fully square with that required under KRS 515.020.

The indictment specified that Mr. Williams committed the robbery while armed. Nothing was heard at trial to establish this other than the reference to Appellant's gesturing to his pocket. This cannot be said to have met the Commonwealth's burden. Without something tangible backing up the threat, words do not reach beyond the status of threats and as such are insufficient to sustain submission under first-degree robbery.

Accordingly, Appellant Williams' conviction under KRS 515.020 is reversed and remanded for retrial on a charge no greater than second-degree robbery, KRS 515.-030.

GANT, LEIBSON, VANCE and WHITE, JJ., concur.

WINTERSHEIMER, J., files a dissenting opinion in which STEPHENS, C.J., and STEPHENSON, J., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because I believe it reaches the wrong result. I believe the majority misinterprets KRS 515.020(1)(c) which provides that robbery in the first degree occurs when one uses or threatens the immediate use of a dangerous instrument on any person.

The majority opinion appears to state that a victim of a robbery must have visual or physical contact with something tangible before the victim is entitled to experience fear. The majority cites the reasoning of *Merritt v. Commonwealth,* Ky., 386 S.W.2d 727, 729 (1965) and *Travis v. Commonwealth,* Ky., 457 S.W.2d 481 (1970) in a correct manner but reaches the wrong conclusion. The open brandishing of an object should not be dispositive of the degree of criminal culpability. Here the victim saw a bulge in Williams' pocket which he believed to be a gun. Williams stated that if the victim valued his life he would turn over the money and that if he failed to comply, he would be killed with the object hidden in Williams' pants. It is obvious that the bulge, coupled with Williams' threats, was an object intended by its user to convince the victim that it was a pistol or another deadly weapon, and did so convince him. *See Merritt, supra.*

In my view, the majority opinion implicitly concedes that the victim's subjective feeling should control the degree of criminal responsibility but improperly concludes that the victim's subjective feeling was not dispositive in this case because of the mere want of a seen or felt tangible object upon which to base the subjective reaction.

The victim/clerk was working alone in a convenience store in the early morning hours of June 9, 1984. Williams entered the store at approximately 4:15 a.m. and went to the cooler for a six-pack of beer. The clerk informed him that beer could not be sold after 2 a.m. Williams became angry and threw the beer on the floor and said "Do you want your life?" The clerk first believed Williams to be joking. The same threat was then repeated and Williams reached to his back pocket and said to lie down on the floor if the clerk wanted his life. The victim quickly complied believing that Williams had a weapon. The defendant then went to the cash register and unsuccessfully attempted to open it. The clerk then jumped up and ran out of the store. Williams threatened the clerk as he ran out and the victim replied "If you're going to shoot me, you'll have to shoot me in the back." Once outside, the victim shouted to a man who had just made a purchase in the store to call police. A few moments later, a frequent customer rode up on his bike and was warned by the victim not to enter the store because it was being robbed. Williams came out of the store and almost ran into the would-be customer. Williams reached for his back pocket as if he were going for a gun. The would-be customer jumped the hedge and cut his leg in his flight. By that time, police arrived and a foot chase ensued. Williams was apprehended when he fell into a drainage ditch.

The victim testified that he did not see a gun but that he believed Williams had a gun because of the bulge he saw in Williams' pocket, coupled with the threats and the acts of reaching toward the pocket. The would-be customer also testified that he did not see a gun but believed that Williams had one in his back pocket.

It is my opinion that the trial judge did not commit reversible error in overruling the motion by Williams for a directed verdict. There was sufficient evidence to permit the question of first-degree robbery to be submitted to the jury. There was sufficient evidence that Williams committed first-degree robbery by threatening the victim with immediate physical harm with a dangerous, although unseen, instrument. Both the victim and the would-be customer believed that Williams was carrying a gun. Such belief was based on a combination of the threats against their lives and his gestures of reaching towards his back pocket as if he had the means of making the threat a reality.

The culpability of Williams' intent is demonstrated by his threats of physical violence and danger to the victim exists from the response to fear which he perceives as reasonable.

It was a reasonable inference from the evidence presented to conclude that Williams had an instrument capable of inflicting deadly harm on the victim.

Williams clearly intended to and did instill a deadly fear in the victim and the would-be customer through which he accomplished compliance from his victim and completed the theft which was his criminal objective.

I would affirm the conviction in all respects.

STEPHENS, C.J., and STEPHENSON, J., join in this dissent.