Curtis G. SWAIN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–367–MR.

Supreme Court of Kentucky.

Sept. 29, 1994.

Rehearing Denied Dec. 22, 1994.

Thomas L. Conn, Lexington, for appellant.

Chris Gorman, Atty. Gen., Carol C. Ulle-rich, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

Appellant, Curtis G. Swain, was indicted in the Fayette Circuit Court for five counts of First Degree Robbery. He was convicted of all counts and sentenced to sixty years imprisonment. This appeal is as a matter of right.

Appellant was charged with committing a string of robberies in Lexington. The robber was dubbed the "bandanna bandit" because he wore a bandanna around his head during each of the robberies. Each crime involved a convenience type store, and appellant was arrested after the November 30, 1992 robbery. He was apprehended wearing clothing which matched the eye witnesses' description and in possession of a .32 calibre handgun and a tire tool wrapped to resemble a gun. There was evidence at trial that the weapon was not loaded when found and no fingerprints were found on the gun.

For each robbery, the store clerk who was on duty sufficiently described appellant as the perpetrator, identified him in a police line-up and at trial. However, only one of the robbery victims testified that he had actually seen a weapon during the commission of the crime. On one other occasion, appellant had said that he had a gun and demanded money. But, on the three remaining occasions, appellant did not reveal or refer to any weapon. He merely demanded money while keeping his hands in his pockets.

Appellant moved for directed verdicts on grounds that he could not be convicted of first degree robbery because the Commonwealth had failed to present evidence of his use or possession of a deadly weapon or a dangerous instrument. The trial court denied all such motions. Appellant presented only one witness who attempted to show it was impossible for him to have committed two of the robberies.

## I. SUFFICIENCY OF EVIDENCE

Appellant first contends that the Commonwealth failed to establish that he had been armed with a deadly weapon and that his convictions for first degree robbery were improper.

KRS 515.020, Robbery in the first degree, provides:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

   (a) Causes physical injury to any person who is not a participant in the crime; or

   (b) Is armed with a deadly weapon; or

   (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

Robbery in the second degree, KRS 515.030, has the same elements with the exception of requiring physical injury, use of a deadly weapon or dangerous instrument.

In *Lambert v. Commonwealth*, Ky.App., 835 S.W.2d 299 (1992), the defendant threatened the use of a firearm in the robbery of a bank. Even though he did not flourish the weapon in front of the bank teller, he did display the butt of a handgun. The court noted that it was reasonable for the teller to conclude that the entire object was a weapon and the Court of Appeals held that the entire object alleged to be a deadly weapon or dangerous instrument need not be observed to support a conviction for first degree robbery. *Id.* at 300. In *Williams v. Commonwealth*, Ky., 721 S.W.2d 710 (1987), this Court held that a "mere pocket bulge" was insufficient to create a jury issue as to the existence of a deadly weapon or dangerous instrument. We stated that without the instrument being seen, an intimidating threat, albeit coupled with a menacing gesture, cannot suffice to meet the standard necessary for a first degree robbery conviction.

In all but one instance of existing case law, the object supporting the first degree robbery conviction was seen by the victim. Only

in *Travis v. Commonwealth,* Ky., 457 S.W.2d 481 (1970), was it unseen, but in that case the victim testified that a sharp point was pressed against his back, establishing the existence of a weapon or facsimile thereof. In *Travis* the reasoning developed in *Merritt v. Commonwealth,* Ky., 386 S.W.2d 727 (1965), was utilized, "any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does so convince him is one." *Id.*

In the case at bar, in one of the robberies there was direct proof that appellant was in possession of a deadly weapon or dangerous instrument. That single instance involved a pistol and we affirm that conviction.

In one other instance appellant referred to a gun and demanded money. We believe these acts are sufficient to come within the reasoning of *Merritt v. Commonwealth, supra,* and the motion for directed verdict on the first degree robbery charge was properly overruled.

■ As to the three remaining first degree robbery convictions, there was no evidence to prove anything more than menacing gestures by the appellant and assumptions by the victims that appellant may have been in possession of an object which was a deadly weapon or dangerous instrument. While the victim may have been in fear, as this court stated in *Williams, supra,* "perceiving danger is quite real under threat; however, such cannot serve to convert something merely speculated upon (a weapon or instrument) into established existence." *Id.* at 712. For the foregoing reasons, it was error for the trial court to deny appellant's motion for a directed verdict on the first degree robbery charges in which no gun was seen or mentioned. For this Court "to do otherwise places [the appellant] virtually without defense at the caprice of a victim's subjective evaluation without regard to the actual course of events and could lead to convictions for crimes neither intended nor committed." *Id.* A directed verdict should have been granted as to first degree robbery on these three counts.

## II. FAILURE TO INSTRUCT ON SECOND DEGREE ROBBERY

Appellant next contends that the trial court erred in not instructing the jury on the offense of second degree robbery. It is well settled that the trial court should instruct the jury on every theory of the case supported by the evidence, including lesser offenses. *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988).

■ We have already decided that there was no error with respect to the conviction in which appellant flourished the weapon and on this count, appellant's instruction claim is without merit. As to the count in which appellant merely stated that he had a gun but did not flourish it, the trial court should have instructed on second degree robbery. It would not have been unreasonable for the jury to believe that appellant had no gun and if it so believed, a conviction for second degree robbery would have been authorized. Upon retrial of this count, the jury should be so instructed and authorized to find appellant guilty of first degree robbery or second degree robbery, depending upon what it believes from the evidence. As to the three counts in which no weapon was seen or mentioned but in which appellant demanded money while having at least one hand inside his clothing, the jury should have been instructed on robbery in the second degree and theft by unlawful taking. As to robbery in the second degree, the facts presented here are sufficient to constitute a threat of immediate physical force if the jury believes from the evidence there was such, or theft by unlawful taking if it believes there was no threat of physical force.

## III. RECOMMENDATION OF CONCURRENT SENTENCING

■ Appellant's final contention is that the trial court erred when it imposed consecutive terms in prison contrary to the recommendation of the jury that appellant's sentences be served concurrently. This issue has been recently and fully considered with a clear majority of the Court having held that the recommendation with respect to concurrent or consecutive sentencing is not binding upon

the trial court. *Dotson v. Commonwealth,* Ky., 740 S.W.2d 930 (1987). There is no need to further address this issue.

## CONCLUSION

In summary, we have affirmed one of appellant's first degree robbery convictions and reversed the four remaining convictions. Appellant may be retried upon these four counts and in the event of such retrial, the jury should be instructed as set forth herein. In any event, however, since appellant was sentenced upon the robbery convictions and as a persistent felony offender in the second degree to a term of sixty years, it is necessary to vacate the sentence imposed and remand to the trial court for re-sentencing or further proceedings consistent herewith.

STEPHENS, C.J., and REYNOLDS, J., concur.

LEIBSON and STUMBO, JJ., concur as to Parts I and II, but as to Part III, STUMBO dissents by separate opinion in which LEIBSON, J., joins.

SPAIN and WINTERSHEIMER, JJ., concur as to Part III, but as to Parts I and II, SPAIN, J., dissents in part by separate opinion in which WINTERSHEIMER, J., joins.

STUMBO, Justice, concurring in part, and dissenting in part.

Respectfully, I dissent from Section III of the majority opinion for the reasons set forth in the dissent authored by Justice Leibson in *Dotson v. Commonwealth,* Ky., 740 S.W.2d 930, 932–934 (1987).

LEIBSON, J., joins this dissent.

SPAIN, Justice, concurring in part and dissenting in part.

I concur in those portions of the Majority Opinion which affirm the first-degree robbery conviction as to one count and which find no error in the trial court's refusal to accept the jury's recommendation as to concurrent sentencing.

I nevertheless dissent from the reversal of the convictions of first-degree robbery on the remaining four counts and the sentences set thereon by the trial court.

In my opinion, the circumstances attending the holdups by Swain of the store clerks in all five of these robberies were sufficient to sustain the first-degree robbery verdicts of the jury. Under both *Merritt v. Commonwealth,* Ky., 386 S.W.2d 727 (1965), and its progeny, *Travis v. Commonwealth,* 457 S.W.2d 481 (1970), cited by the Majority, this Court focused more on the perception of the victim than on the actuality of whether the robber was, in fact, armed with a deadly weapon. As said in *Merritt, supra,* at p. 729:

> Any object that is intended by its user to convince the victim that it is a pistol or other deadly weapon and does so convince him *is* one. (Emphasis in original.)

Moreover, the intent of the robber in this regard may be inferred from the act itself and from the circumstances surrounding it. *Stevens v. Commonwealth,* Ky., 462 S.W.2d 182, 184 (1970).

Under the tests set out above, I have no doubt that Swain intended for each store clerk to believe that he was armed with the .32 caliber pistol which was, in fact, found in his possession when he was arrested later. Nor do I have any doubt that each clerk so believed.

Clerk Quinn testified that she saw the revolver at the time of the Chevron robbery and positively identified the weapon during cross-examination. (This was the only robbery conviction affirmed by the Majority.)

Clerk Sutphin testified that when the robber entered the Dairy Mart on Mt. Tabor Road he mumbled, "Gun. Money." She didn't fully understand the man so he repeated, "I have a gun and I want your money." The man kept his right hand in his jacket pocket indicating he had a gun. Believing the robber had a gun, she gave him $283.

Clerk McLean testified the robber entered his Minit Mart on Squires Road, walked straight to the counter and demanded money. The robber repeated his demand, keeping one hand in his pocket at all times. McLean thought the man had a weapon and he didn't

want to take any chances, so he gave the man $81.

Clerk Bowman testified that the robber approached the counter of the Dairy Mart on Richmond Road. The man put his hand under his shirt and into the waistband of his pants as he was telling Bowman to empty both registers. Bowman thought the man had a gun. He nevertheless told the robber that there was a security guard in the rear of the store, whereupon the robber left without getting any money.

Finally, Clerk Faulkner testified the robber entered the Dairy Mart on Alexandria Drive and ordered him to empty both registers. The man kept his arm under his coat and across his chest throughout the robbery. Faulkner was certain the robber had a gun, and gave him about $400.

Although none of the last four clerks actually saw or felt Swain's pistol, each believed he had one. Swain on each of these occasions either in fact had the pistol in his hand under his shirt (we know he had possession of one when arrested), or he kept his hand or arm under his shirt or coat or in a pocket intending that the clerks would believe he was armed. In either event, I believe Swain was properly convicted of first-degree robbery on all five counts.

WINTERSHEIMER, J., joins.